**Andrew SHAHAN, Appellant–Respondent,**

v.

**Todd SHAHAN, Defendant,**

**State Farm Mutual Automobile Insurance, Respondent–Appellant.**

No. 80871.

Supreme Court of Missouri, En Banc.

April 13, 1999.

Brent Mayberry, Mayberry & Mayberry, Kirksville, for Appellant-Respondent.

Gary P. Paul, Brinker & Doyen, L.L.P., Clayton, for Respondent-Appellant.

ANN K. COVINGTON, Judge.

This appeal arises from a garnishment action following a trial in a personal injury action in which Andrew Shahan won a negligence verdict against his half-brother, Todd Shahan. Andrew sought to garnish the proceeds of an umbrella liability policy and an automobile insurance policy issued by State Farm Mutual Automobile Insurance. State Farm defended on the grounds that the household exclusion contained in each policy precluded coverage. The garnishment court found that Andrew could not recover under the umbrella liability policy, but could recover under the automobile policy. Both parties appealed. The Missouri Court of Appeals,

Western District, affirmed the holding of the garnishment court. This Court granted transfer. Affirmed in part and reversed in part.

Andrew Shahan was injured in an automobile accident in 1991. Todd Shahan, Andrew's half-brother, was driving the vehicle. At the time of the accident, Andrew resided with his mother and stepfather, Nancy and Leo Hunolt. Leo Hunolt was the owner of the vehicle. Todd, who is not related to the Hunolts, resided elsewhere. The Hunolts carried two insurance policies: an umbrella liability policy having a limit of $1,000,000 and an automobile insurance policy with bodily injury coverage of up to $100,000. In March of 1992, Nancy Hunolt, as next friend for Andrew, filed an action for personal injuries against Todd. The judge in the personal injury action was Judge Normile.

In November of 1992, State Farm filed a separate declaratory judgment action naming Todd, Andrew, and Nancy Hunolt as defendants. State Farm sought a declaration that it did not have a duty to defend Todd in the personal injury action on the ground that Todd was not a permissive user. If Todd was not a permissive user, he was not an "insured" under the automobile policy. In May of 1994, the declaratory judgment court found that Todd was a permissive user and that State Farm had a duty to defend Todd.

The personal injury action then resumed in Judge Normile's court. As stated above, the sole parties in the personal injury action were Todd and Andrew. In August of 1995, State Farm tendered $25,000 to the court registry in compliance with the Motor Vehicle Financial Responsibility Law (MVFRA), sections 303.010 to 303.370, RSMo 1994, and filed a motion for leave to withdraw as counsel for Todd. In support of its motion, State Farm asserted that it had tendered its full policy limit because the household exclusion in the automobile policy precluded Andrew from recovering under the policy. In October of 1995, Judge Normile issued a memorandum and order ruling that the household exclusion in the automobile policy did not apply and denying State Farm leave to withdraw. Subsequently, in December of 1995, Judge Normile granted State Farm leave to

withdraw as counsel for Todd, although the judge had not altered his view that the household exclusion in the automobile policy did not apply. In February of 1996, after a trial on the merits, Judge Normile entered judgment in favor of Andrew in the amount of $225,000.

After obtaining a judgment on the merits in the personal injury case, Andrew filed a "Request and Order for Execution/Garnishment" naming State Farm as the garnishee. In November of 1996, Judge Lewis, the garnishment court judge, concluded that Judge Normile's previous ruling on the automobile policy household exclusion was "law of the case" and ordered State Farm to pay the policy limit. Judge Lewis further concluded that Andrew could not recover under the umbrella policy. Both parties appealed.

## I.  State Farm's Appeal

State Farm asserts that the garnishment court erred in determining that the household exclusion in the automobile policy does not apply to Andrew. Before the household exclusion may be examined, however, it is necessary to consider Andrew's claim that the doctrines of collateral estoppel, law of the case, and waiver and estoppel preclude consideration of the household exclusion contained in the automobile policy.

Andrew contends that State Farm is barred by the doctrines of collateral estoppel and res judicata from raising the household exclusion defense in the garnishment action because Judge Normile decided that the household exclusion did not apply to Andrew in the personal injury action. Andrew fails, however, to undertake any analysis with respect to the doctrine of res judicata; his argument invokes only the doctrine of collateral estoppel.

The doctrine of collateral estoppel provides that an issue judicially determined in one action may not be relitigated in another action. *Green v. City of St. Louis,* 870 S.W.2d 794, 797 (Mo. banc 1994). When deciding whether the application of collateral estoppel is appropriate, courts should consider: (1) whether the issue decided in the prior adjudication was identical with the issue pre-

sented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo. banc 1979).

■ The doctrine of collateral estoppel does not apply. Andrew's arguments rest upon the assumption that the "prior adjudication" was Judge Normile's ruling in the personal injury case that the household exclusion did not apply to Andrew because he did not live with Todd. Andrew misperceives the "prior adjudication." Judge Normile's ruling was made in response to State Farm's motion for leave of counsel to withdraw in the personal injury case. The ruling did not result in a judgment on the merits. There is only one prior judgment—the judgment in the personal injury case finding Todd negligent and awarding damages to Andrew. Further, the question of whether Andrew is precluded from recovering under the household exclusion is irrelevant to the question of Todd's liability to Andrew. State Farm was not a party in the personal injury case. State Farm did not have a full and fair opportunity to litigate the issue of whether the household exclusion applied to Andrew; in the personal injury case State Farm was merely defending Todd. To summarize, the issues in the personal injury and the garnishment actions were not identical, the parties were not identical, Judge Normile's ruling on the household exclusion was not a judgment on the merits, and State Farm did not have a full and fair opportunity to litigate the issue of the household exclusion. Collateral estoppel does not bar State Farm's raising the household exclusion as a defense in the garnishment action.

Andrew also contends that State Farm is barred by the doctrine of res judicata from raising the household exclusion defense in the garnishment action because of the judgment in the declaratory judgment action that Todd was a permissive user. Again, Andrew

undertakes no analysis under a res judicata theory; he focuses instead upon the elements of collateral estoppel. Because the household exclusion issue was not decided in the declaratory judgment action, State Farm is not collaterally estopped from litigating the issue in the garnishment action.

■ Andrew further asserts that the rulings of Judge Normile in the personal injury action regarding automobile policy's household exclusion are the law of the case in the garnishment action, and, therefore, cannot be addressed by this Court. The "law of the case" doctrine governs successive adjudications involving the same issues and facts. *Oldaker v. Peters*, 869 S.W.2d 94, 97 (Mo. App.1993). The general rule is that the decision of a court is the law of the case for all points presented and decided, as well as for matters that arose prior to the first adjudication and might have been raised but were not. *Walihan v. St. Louis–Clayton Orthopedic Group, Inc.*, 891 S.W.2d 545, 547 (Mo. App.1995). The court's decision remains the law of the case throughout all subsequent proceedings, both in the trial and appellate courts. *In re Marriage of Quintard*, 735 S.W.2d 388, 390 (Mo.App.1987).

■ The law of the case doctrine does not apply. Judge Normile's ruling was made on State Farm's motion to withdraw as counsel for Todd in the personal injury case between Andrew and Todd. State Farm was not bound by Judge Normile's ruling because it was not a party in the personal injury case. Further, State Farm was not an aggrieved party; it obtained from Judge Normile the relief it sought. State Farm lacked standing to appeal the household exclusion issue until Judge Lewis issued his order in the garnishment action. *See Noll v. Shelter Ins. Co.*, 774 S.W.2d 147, 149 (Mo. banc 1989).

■ Andrew also argues that State Farm has waived the defense that the household exclusion precludes coverage or is estopped from arguing that the household exclusion applies in the instant case. Estoppel, the preferred theory when an insurer elects a policy defense, *Macalco Inc. v. Gulf Ins. Co.*, 550 S.W.2d 883, 891–92 (Mo.App.1977), requires that the insurer "first announce a

specific defense and subsequently seek to rely instead on an inconsistent theory." *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 388 (Mo. banc 1989). The insurer's actions must induce the insured to rely on the original defense and cause the insured injury. *Id.* In addition, the insured must show that he was prejudiced by the insurer's actions before estoppel may be invoked. *Id.* Prejudice beyond the mere filing of a lawsuit is required for estoppel to apply. *Id.* Andrew claims that he relied on Judge Normile's ruling that the household exclusion did not apply.

▮▮▮▮ The doctrine of estoppel is of no assistance to Andrew. Judge Normile's ruling in the personal injury case is irrelevant. To succeed, Andrew would have to show that in the personal injury case, State Farm announced a specific defense, then later in the garnishment action sought to rely upon an inconsistent theory. State Farm argued the household exclusion defense in its *motion to withdraw* as counsel in the personal injury case. It was not inconsistent for State Farm to raise the same defense in the garnishment action. Andrew would need also to show that he detrimentally relied on State Farm's actions, that he suffered injury as a result of the reliance, and that he was prejudiced by State Farm's actions. *Id.* Andrew has not

explained how he relied upon State Farm's actions. He does not allege how he was injured by his reliance. Nor does Andrew allege any facts demonstrating prejudice. The doctrine of estoppel does not apply.[1]

▮▮▮▮ Waiver, disfavored because it is rarely applicable in the context of a case such as this, is "the intentional relinquishment of a known right." *Id.* at 386–87. Waiver may be express or it may be implied by conduct that clearly and unequivocally shows a purpose by the insurer to relinquish a contractual right. *Id.* Andrew contends that State Farm "waived" the right to claim that the household exclusion precludes coverage when State Farm sought a declaratory judgment to declare that it had no duty to defend Todd because Todd was not a permissive user of the automobile. The contention is without merit. State Farm's assertion in the declaratory judgment action that it had no duty to defend Todd because Todd was not a permissive user did not evidence a purpose intentionally to relinquish the right to assert that the household exclusion precludes coverage for Andrew.

In sum, neither State Farm's actions in the declaratory judgment action nor Judge Normile's ruling in the personal injury action allowing State Farm to withdraw from defense of Todd precludes an examination of

---

1. Although Andrew's only allegation is that estoppel applies to Judge Normile's ruling in the personal injury action regarding the household exclusion, the dissent offers a new theory that State Farm's actions during the declaratory judgment action are grounds for estoppel. The dissent does not, however, explain how Andrew detrimentally relied upon or was injured by State Farm's assertion in the declaratory judgment action. The filing of a lawsuit does not constitute prejudice. *Brown*, 776 S.W.2d at 388.

The dissent also contends that State Farm is estopped from asserting the household exclusion because State Farm undertook to defend Todd without a reservation of rights, citing *State Farm Mut. Auto. Ins. Co. v. MFA Mut. Ins. Co.*, 485 S.W.2d 397, 402 (Mo. banc 1972), and *Mistele v. Ogle*, 293 S.W.2d 330, 334 (Mo.1956), both of which were decided on a waiver, not estoppel, theory. The dissent's analysis presents a hybrid "waiverestoppel" argument. Waiver and estoppel are, however, two distinct legal theories. In *Brown*, 776 S.W.2d at 388, this Court clarified the differences between waiver and estoppel. As stated above, estoppel is the preferred theory

when an insurer elects a policy defense as State Farm did in this case. *Id.* As noted above, there is no waiver. To establish estoppel, Andrew must demonstrate all of the elements of estoppel, including prejudice. Despite the dissent's contention that prejudice is clear on the record, neither the dissent nor Andrew has presented any facts that demonstrate how allowing State Farm to present the household exclusion in the garnishment action prejudices Andrew.

The dissent argues that Andrew "stands in the shoes" of Todd so that Andrew need not prove that State Farm's actions prejudiced him. The dissent alleges that because State Farm's counsel was responsible for Todd's defense in the personal injury action, Todd was prejudiced by counsel's withdrawal. Even assuming, arguendo, that Andrew stands in the shoes of Todd, Todd was not prejudiced. Todd was individually represented by attorney Jay Benson throughout, in addition to Hadley Grimm, the attorney retained by State Farm. After State Farm withdrew, Judge Normile allowed Benson a continuance. There has never been any claim that Benson did not have opportunity to prepare and to present an adequate defense on behalf of Todd.

the household exclusion in the Hunolt's automobile policy.

▪▪▪ Rules governing the interpretation of insurance policies are well settled. *Columbia Mut. Ins. Co. v. Schauf,* 967 S.W.2d 74, 77 (Mo. banc 1998). When interpreting the language of an insurance contract, this Court gives the language its plain meaning. *Farmland Indus., Inc. v. Republic Ins. Co.,* 941 S.W.2d 505, 508 (Mo. banc 1997). The plain or ordinary meaning is the meaning that the average layperson would understand. *Id.* To determine the ordinary meaning, this Court consults standard English language dictionaries. *Id.* Applying rules of construction is unnecessary when a contract provision is clear and unambiguous. *State Farm Mut. Auto. Ins. Co. v. Ballmer,* 899 S.W.2d 523, 525 (Mo. banc 1995). Courts are not permitted to create ambiguities in order to distort the language of an unambiguous policy. *Rodriguez v. General Acc. Ins. Co. of America,* 808 S.W.2d 379, 382 (Mo. banc 1991).

▪▪▪ The plain language of the household exclusion in this case disallows coverage for Andrew. State Farm issued Leo and Nancy Hunolt an automobile insurance policy with bodily injury coverage up to $100,000. The household exclusion in the policy excludes coverage "for any bodily injury to ... any insured or any member of an insured's family residing in the insured's household." (emphasis added). The conjunction "or" means "an alternative between different or unlike things, states, or actions." *Webster's Third New International Dictionary* 1585 (1993). The plain language of the household exclusion provides, therefore, for two distinct exclusions. The first exclusion prohibits the coverage of "any insured." The second prohibits coverage of "any member of an insured's family residing in the insured's household." *Jasper v. State Farm Mut. Auto. Ins. Co.,* 875 S.W.2d 954, 956 (Mo.App. 1994).[2]

The first of the two distinct exclusions – that which excludes coverage of "any in-

sured" – plainly precludes coverage of Andrew and is dispositive. The policy defines "insured" as:

1. you [the named insured or insureds];
2. your spouse;
3. the **relatives** of the first person named in the declarations;
4. any other person while using such car if its use is within the scope of consent of you or your spouse;
5. any other person or organization liable for the use of such a car by one of the above insureds.

(emphasis added). "Relative" is defined as "a person related to you or your spouse by blood, marriage or adoption who lives with you." The policy lists Leo and Nancy Hunolt as the named insureds. Andrew lives with his mother, Nancy Hunolt, and stepfather, Leo Hunolt. Andrew, therefore, is a "relative," as defined by the policy. As a relative of the Hunolts, Andrew is an "insured." As a consequence, he falls within the category of "any insured" under the household exclusion. Andrew, therefore, is precluded from recovering under the policy beyond the $25,000 required by the MVFRA.

This Court's opinion in *State Farm Mut. Auto. Ins. Co. v. Ballmer,* 899 S.W.2d 523 (Mo. banc 1995), upon which Andrew relies, does not require a different result. In *Ballmer,* the driver was a permissive user, therefore, an "insured." The injured party was a passenger who lived in the same household as the driver. *Id.* at 524. Unlike the case at hand, the injured party in *Ballmer* was not an "insured" and did not fall within the first exclusion, which excludes "any insured" from coverage. The *Ballmer* court, therefore, examined the second exclusion, which excludes "any member of an insured's family residing in the insured's household." The *Ballmer* court stated that the term "the insured" in the exclusion is not limited to the named insured, but refers to any person or organization falling within any one of the five categories included in the

<hr>

2. Even assuming that the household exclusion could be read in some other context at some other time to have a different meaning, the dissent's interpretation is strained and unnatural.

The rule of broad construction of insurance contracts does not require this Court to adopt a tortured meaning that encompasses so few situations as to render the exclusion meaningless.

policy definition of "insured." *Id.* at 526. The term "the insured," refers to the person or organization identified previously in the exclusion as "an insured." *Id.* Under the second exclusion, an injured person is not entitled to recover under the policy if he or she resides with a family member who falls within the policy definition of "insured." Because the passenger in *Ballmer* resided with the driver, the household exclusion precluded the passenger from recovering under the insurance policy. *Id.* Nothing in *Ballmer* or in the plain language of the household exclusion limits the exclusion to the driver's household.

To summarize, the plain language of the household exclusion precludes coverage for bodily injury to "any insured." Andrew Shahan, who is an "insured," falls within the category of "any insured." The plain language of the household exclusion precludes Andrew Shahan from recovering under the Hunolt's automobile insurance policy.

## II.   Andrew Shahan's Appeal

■■■   The $1,000,000 umbrella liability policy State Farm issued to the Hunolts contained the following exclusion: "We will not provide insurance:  .... for personal injury to ... anyone within the meaning of part a. or b. of the definition of insured."  " '[I]nsured' means: a. the named insured; the following residents of the named insured's household: (1) the named insured's relatives; and (2) anyone under the age of 21 under the care of a person named above."  Both Leo and Nancy Hunolt were named insureds on the policy.  Andrew does not dispute that he was both a relative of and in the care of a named insured while residing in the named insured's household.  Andrew, therefore, is an "insured" under the umbrella liability policy.  As such, Andrew is precluded from recovering under the policy.

■■■   Andrew asserts, nevertheless, that the household exclusion does not preclude him from recovering under the policy.  In support of his assertion, Andrew relies on theories related to estoppel, waiver, and res judicata.  Since there was no previous claim

or denial of coverage under the umbrella liability policy, none of these theories applies. The trial court properly determined that Andrew Shahan could not garnish the proceeds of the umbrella liability policy.

## III.   Conclusion

The trial court's holding that Andrew Shahan could not recover under the umbrella liability policy is affirmed.  The trial court's determination that Andrew Shahan could recover under the automobile insurance policy is reversed.  The judgment, therefore, is affirmed in part and reversed in part.

BENTON, C.J., LIMBAUGH and HOLSTEIN, JJ., concur.

WHITE, J., dissents in separate opinion filed.

PRICE and WOLFF, JJ., concur in opinion of WHITE, J.

RONNIE L. WHITE, Judge, dissenting.

I respectfully dissent.

## I.   Estoppel and the Application of *Brown v. State Farm*

The principal opinion draws its estoppel analysis from *Brown v. State Farm Mut. Auto Ins. Co.,*[1] an opinion that was explicitly designed to deal with a particular, narrow question.  By applying that analysis out of the context in which it was developed and broadening *Brown* into a rule of general application, the Court today undermines an important doctrine that has long protected Missouri insurance consumers.

As *Brown* itself notes, the longstanding rule is that "an insurer, having denied liability on a specified ground may not thereafter deny liability on a different ground."[2]  It was the interpretation, not the viability, of this rule that was at issue in *Brown.*  The question before the Court was whether the rule that prejudice is presumed, where an insurer announces a specific defense and later seeks to rely on a different defense.  This applies with equal force where the insurer issues a general denial, and later relies on a more

**1.**   776 S.W.2d 384, 386 (Mo. banc 1989).

**2.**   *Id.* at 386.

specific defense falling within that general denial. In *Brown*, the insurer issued a denial letter stating that the claim (an alleged car theft) was "not a loss as defined by your policy."[3] When the insured sued for coverage, State Farm sought to prove that the claim was not a "loss" (defined in the policy as an "accidental loss"), because Ms. Brown was complicit in the theft.[4] The trial court excluded this evidence on estoppel grounds. In reversing, this Court held that "where the insurer's initial denial is stated in such a way that it reasonably implies the subsequently, but more specifically stated, consistent reason for denial," no detrimental reliance can be claimed, and no prejudice occurred merely because the claimant was forced to file suit.[5] The *Brown* Court, however, reiterated that the announcement of a specific defense itself prejudices the claimant merely by causing him or her to prepare to combat that particular defense and not others:

> It is the announcement of the specific defense which lulls the insured into relying to his detriment and subsequent injury on the insurer's stated position. Thus "the rationale of these cases is that the plaintiff has relied to his detriment on the assertion of the defense by preparation to meet that issue and that the defendant may not shift the grounds of the defense after the fact."[6]

It is undisputed that in this case State Farm initially denied coverage to Todd Shahan by filing a declaratory judgment action asserting he was not covered by the Hunolt's insurance because he was not a permissive user of their car. State Farm offered no other grounds for denying coverage. State Farm lost the declaratory judgment and immediately undertook an active defense of Todd Shahan. This defense ended in August of 1995, nearly three years after State Farm filed its declaratory judgment action. State Farm sought to withdraw from the representation upon the completely different ground that the injuries suffered by Andrew Shahan were excluded from coverage under the household exclusion in State Farm's policy. This is not a situation, as in *Brown*, where the later-claimed defense is merely a more specific version of the earlier denial. Accordingly, under *Brown*, as under earlier cases, no further prejudice need be demonstrated to estop the insurer from denying coverage.

Even if *Brown* did require some additional showing of prejudice in this situation, such prejudice is amply demonstrated here. State Farm first undertook and then abandoned Todd Shahan's defense. In Missouri, as elsewhere, it is the rule that an insurer, with knowledge of facts that would give rise to a defense of noncoverage, who nevertheless undertakes to defend an insured without a reservation of rights, is generally estopped from raising such a defense subsequently.[7] In such circumstances the danger of prejudice to the insured is severe, since the insurer has the power to bind the defendant to a particular defense relative to the plaintiff. Consequently, a minimal showing of prejudice, including mere delay in withdrawing from a defense after discovery of relevant facts indicating noncoverage, may be sufficient to estop the insurer from subsequently denying coverage.[8] Indeed, some cases take the position that "where the insurer takes over complete control of the defense with knowledge of the coverage question, prejudice to the insured is conclusively presumed, and need not be alleged or proved."[9]

---

3. *Id.*

4. *Id.*

5. *Id.* at 389.

6. *Id.* (quoting *Morris v. Travelers Ins. Co.*, 546 S.W.2d 477, 487–8 (Mo.App.1976)).

7. *State Farm Mut. Auto. Ins. Co. v. MFA Mut. Ins. Co.*, 485 S.W.2d 397, 402 (Mo. banc 1972); *Mistele v. Ogle*, 293 S.W.2d 330, 334 (Mo.1956); 7C Appleman, Insurance law and Practice, sec. 4692.

8. *See, e.g., Mistele*, 293 S.W.2d at 334 (two year delay in withdrawing from representation after facts giving rise to defense of noncoverage allegedly became known sufficient to submit question of estoppel to factfinder).

9. 7C Appleman, Insurance Law and Practice, sec. 4693. *See also Royle Mining Co. v. Fidelity & Cas. Co. of New York*, 161 Mo.App. 185, 142 S.W. 438, 442 (1911).

The principal opinion holds that Todd Shahan was not prejudiced by State Farm's conduct of his defense and eve of trial withdrawal because he was represented by his own counsel throughout the litigation. But this counsel was, according to the affidavit he filed when requesting a continuance after State Farm abruptly withdrew, "secondary," and State Farm's counsel was "the only attorney involved in the management of the defense of th[e] case." During that time extensive litigation was conducted, an answer was filed on behalf of Mr. Shahan, discovery was had and numerous hearings were held. It was more than a year after undertaking to defend Mr. Shahan (and three years after the initial action was filed), and only after a pretrial conference had been held and voir dire commenced, that State Farm's counsel sought to withdraw from the representation. This request was initially denied. It was ultimately granted when State Farm made clear to the court that it would no longer pay for counsel's time, even if the court required him personally to continue to defend Todd Shahan. Mr. Shahan was clearly prejudiced by the delay occasioned by State Farm's eve of trial withdrawal. Also, he was forced to try his case on the record developed by State Farm, with an attorney who was far less familiar with the case, and had far less time to prepare it, than the counsel State Farm provided to Mr. Shahan, and then abruptly withdrew.

The majority opinion holds that this clear prejudice is not relevant, however, since Andrew Shahan, the injured plaintiff must be prejudiced by the initial denial and subsequent defense on new grounds, in order to take advantage of an estoppel argument. In my view, this holding ignores the procedural posture of this case. "Garnishment is a legal process through which a holder of a judgment may apply sums which others owe the judgment debtor to the satisfaction of the judgment. It is said that the garnishor stands in the shoes of the judgment debtor." [10] The question in garnishment is not whether State Farm has a defense against the plaintiff garnishor. The question is whether it has a defense against the insured defendant: " 'whatever defence the garnishee could urge against an action by the defendant, for the debt in respect of which he is garnished, he may set up in bar of a judgment against him as garnishee.' " [11] State Farm has no policy defense against Andrew Shahan's garnishment action, except to the extent that it has such a defense against primary liability to Todd Shahan, its insured. If estoppel operates to prevent State Farm raising a defense against Todd Shahan, then State Farm may not raise that defense against a garnishor to whom Todd Shahan is indebted. State Farm's failure to raise the household exclusion until the very eve of trial clearly prejudiced Todd, and State Farm should be estopped from raising the exclusion against him, as well as against Andrew Shahan, who is merely attempting to collect the debt State Farm owes to Todd. To reach the conclusion as the principal opinion does, a garnishee may raise a defense against a garnishor that it would be estopped from raising against the judgment debtor defeats the very purpose of garnishment. The purpose is to allow a judgment creditor to recover monies to which the judgment debtor is entitled.

Because State Farm initially denied Todd coverage on one specific basis, it is estopped from denying coverage based upon a different specific policy defense. To the degree that further prejudice is required in such circumstances, it is manifestly shown by State Farm's first undertaking an unconditional defense of Todd Shahan and then withdrawing from that representation, despite at all times being aware of the facts giving rise to its later-claimed defense. Andrew Shahan, as a garnishor, is subject to State Farm's defenses to coverage only to the extent that Todd Shahan, as a judgment debtor, would be; State Farm is therefore estopped from denying coverage of Todd in the present garnishment action.

## II. Household Exclusion

I agree both with the principal opinion's admonition that language should be read to

---

10. *Wenneker v. Physicians Multispecialty Group*, 814 S.W.2d 294, 296 (Mo. banc 1991).

11. *Id.* (quoting Drake on Attachments, sec. 672).

mean what it plainly says and with its definition of the word "or." I disagree, however, that these premises support the conclusion that the sentence "THERE IS NO COVERAGE:.... FOR ANY *BODILY INJURY* TO:.... ANY *INSURED* OR ANY MEMBER OF AN INSURED'S FAMILY RESIDING IN THE *INSURED'S* HOUSEHOLD" is completely devoid of ambiguity.

Even when written in non-technical language, it is not inherently clear whether a phrase following two items joined by a disjunctive modifies both or only the latter of the two. In the sentence "There is no dessert for any boy or any girl who does not finish dinner," "or" clearly separates unlike things ("any boy" and "any girl") and creates two distinct classes. The sentence is nevertheless ambiguous, because the two classes could be 1) boys and 2) girls who do not finish dinner, or 1) boys who do not finish dinner and 2) girls who do not finish dinner. Since exclusions are construed narrowly, in favor of coverage, the more restrictive of the two possible constructions applies. Thus, the household exclusion at issue here excludes coverage for injuries to 1) any insured residing in the insured's household and 2) any member of an insured's family residing in the insured's household.

Because Andrew Shahan is, as he concedes, "an insured" within the meaning of the policy, the decisive question is whether he resides in "the insured's household." The question of which insured is "the insured" under this policy language has been extensively litigated. In *State Farm Mutual Insurance Co. v. Ballmer*, this Court overruled an earlier court of appeals opinion holding this exclusion ambiguous.[12] In *Ballmer* and *Carney*, the injured party was a passenger who resided in the same household as the permissive driver, but was not residing with the named insured. The *Carney* court held that the exclusion was ambiguous, since the phrase "the insured" could mean the named insured, or it could refer back to the person identified as "an insured" earlier in the policy, in that case the permissive driver.[13] The court construed the ambiguity against the insurer and in favor of coverage and held the exclusion inapplicable.[14] In overruling *Carney*, this Court disagreed and held that the exclusion unambiguously expressed the second meaning described in *Carney*, that is, that "the insured" referred back to the earlier phrase "an insured" and, thus, meant to refer to the "specific category of 'insured' that applies to the situation."[15] In *Ballmer*, as here, that category was the permissive driver definition under section 4. of the definition of "insured," and the Court upheld applicability of the exclusion, since the injured party resided in the same household as the permissive driver.[16] Here, the factual situation is reversed. Instead of residing in the same household as the permissive driver, the injured party resides in the same household as the named insureds. To hold, as State Farm argues, that "the insured" under the exclusion can mean both the named insured as well as the permissive driver, would be to accept the precise argument this Court rejected in *Ballmer*.

Under *Ballmer*, "the insured" means the particular tortfeasor identified under the definition of "insured," in this case, the permissive driver, Todd Shahan. Thus, the exclusion, read in light of *Ballmer*, prohibits coverage of injuries to 1) any insured who lives in the tortfeasor's household or 2) any member of an insured's family who resides in the tortfeasor's household. This reading is consistent with the public policy allowing narrow household exclusions in some restricted circumstances. While generally disfavored, such clauses are permissible "to exempt the insurer from being required to cover claims by those persons to whom the insured, on account of close family ties, would be apt to be partial in the case of injury; the exclusion serves to protect the

---

12.  899 S.W.2d 523, 525 (Mo. banc 1995) (overruling *State Farm Mut. Auto. Ins. Co. v. Carney*, 861 S.W.2d 665 (Mo.App.1993)).

13.  *Carney*, 861 S.W.2d at 668–69.

14.  *Id.*

15.  *Ballmer*, 899 S.W.2d at 526.

16.  *Id.*

**540**

insurer against collusive or cozy claims."[17] Under the principal opinion's interpretation, the household exclusion applies to bar coverage to a permissive driver for injuries he causes to any other person eligible to be an insured driver under the policy. This is true where the injured party and the tortfeasor have no close connection and do not reside in the same household. Here, Todd Shahan and Andrew Shahan shared little more than a last name. There is nothing in the record suggesting collusion, and the principal opinion's reasoning would apply even if they were not half-brothers. If State Farm had intended to have its household exclusion cover persons who did not reside in the same household as the tortfeasor, it would have been more natural and unambiguous for the exclusion to exclude coverage for any member of an insured's family who resides in *an* insured's household. Since State Farm did not write the policy this way, I disagree with the majority's decision to give it this construction, especially in light of the public policy requiring exclusions to be narrowly construed against exclusion.

The decision in *Ballmer* and the public policy allowing household exclusions limit the applicability of the exclusion at issue here to instances where the injured party resides in the tortfeasor's household. Because Andrew and Todd did not reside in the same household, Andrew's injuries were not excluded from coverage under the automobile policy, and he is entitled to the proceeds of that policy.

### III. Conclusion

In my view, State Farm's conduct estops it from asserting the household exclusion in its policies against garnishor, Mr. Shahan, and, in any case, the household exclusion in the automobile policy at issue here does not bar coverage for liability between persons who do not live in the same household. Accordingly, with respect, I dissent.

**17.** 8 Couch on Insurance 3d 114:25–26.